**CABLE HOLDINGS OF GEORGIA, INC., d/b/a Smyrna Cable TV**

v.

**McNEIL REAL ESTATE FUND VI, LTD., d/b/a, Lakes Apartments and Woodsong Apartments, The Robert A. McNeil Corporation, and ODC Communications Corporation.**

No. C85–3712A.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 10, 1986.

Stephen E. O'Day, Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., Howard Graff, Bloch, Graff, Danzig, Jelline & Mandel, New York City, for plaintiffs.

Mark J. Tauber, Deborah C. Costlow, Piper & Marbury, Washington, D.C., for defendants McNeil and ODC.

John I. Spangler, Sidney O. Smith, Jr., Alston & Bird, Atlanta, Ga., for defendants.

872

## ORDER

RICHARD C. FREEMAN, District Judge.

This action is before the court on cross-motions for summary judgment and on plaintiff's motion to add a party. Defendants do not oppose plaintiff's motion to add a party, so the court will grant such motion.[1]

The facts of this case were set out in detail in the court's December 27, 1985, order. Briefly, plaintiff Cable Holdings of Georgia, Inc. ("Cable Holdings"), installs and operates a cable television system in Cobb County, Georgia, pursuant to a non-exclusive franchise issued by Cobb County. Defendant McNeil Real Estate Fund VI, Ltd. ("McNeil Fund") owns an apartment complex known as The Lakes Apartments. Defendant Woodsong Associates, Ltd. ("Woodsong") owns a complex known as The Woodsong Apartments. Defendant Robert A. McNeil Corporation ("McNeil Corporation") manages both apartment complexes. Plaintiff, pursuant to separate contracts with defendants, provided cable services to the tenants of the two apartment complexes. Both contracts were of limited duration, and on August 28, 1985, defendants gave plaintiff notice of termination of the Lakes contract effective immediately and of the Woodsong contract effective October 27, 1985.

The parties have filed cross-motions for summary judgment on plaintiff's claim that the Cable Communications Policy Act of 1984, 47 U.S.C. §§ 521–559, (Supp. III 1985) ("The Cable Act"), provides plaintiff with a right of access to serve the tenants at the Lakes and Woodsong Apartments. Plaintiff contends that section 621(a)(2) of the Cable Act, 47 U.S.C. § 541(a)(2), permits it to continue service through the system as currently constructed at the apartment complexes or to reconstruct the system through compatible utility easements.

Defendants respond that section 621(a)(2) grants to cable system operators a very limited right of access and that plaintiff has not and cannot use that right of access to provide service to the tenants over the objections of McNeil Fund and Woodsong. Under defendants' view, Congress granted to cable system operators a right to construct their systems over public rights-of-way and through *publicly-dedicated* easements. Defendant argues that plaintiff and other cable operators cannot construct their systems through easements that have not been publicly dedicated without violating the constitutional right of property owners to just compensation for any taking of their property.

1. *Right of Access Under Section 621(a)(2)*

■ Defendants' and plaintiff's arguments essentially turn on whether Congress intended a cable franchise operator to have a federal statutory right under section 621(a)(2) to run its cables across a landlord's property and into an apartment dwelling despite the landlord's objections. Section 621(a)(2) provides:

Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses, except that in using such easements the cable operator shall ensure—

(A) that the safety, functioning, and appearance of the property and the convenience and safety of other persons not be adversely affected by the installation or construction of facilities necessary for a cable system;

(B) that the cost of the installation, construction, operation, or removal of such facilities be borne by the cable operator or subscriber, or a combination of both; and

(C) that the owner of the property be justly compensated by the cable operator

---

1. Plaintiff and defendants are willing to have the court's ruling on the cross-motions for summary judgment apply to Woodsong Associates, Ltd., whom plaintiff seeks to add as a defendant. Thus, this order will apply to defendant Woodsong unless Woodsong objects within 20 days of the date of entry of this order.

for any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator.

Defendants' argument that section 621(a)(2) grants a right to construct only through publicly-dedicated easements must be rejected. The language of the section contains no requirement that the easement be dedicated for public use. Moreover, defendants have not pointed to any legislative history supporting their strained interpretation of section 621(a)(2). Defendants' argument that section 621(a)(2) is unconstitutional if the court adopts plaintiff's interpretation also must be rejected. To do so, however, requires an examination of the legislative history of that section and of unenacted section 633.

Section 633 of the original House version of the Cable Act would have explicitly prohibited a landlord from interfering with the construction or installation of any cable system facility necessary to providing cable service, if such service had been requested by a tenant. *See* H.R.Rep. No. 934, 98th Cong., 2d Sess. 114 (1984), U.S.Code Cong. & Admin.News 1984, p. 4655. Section 633(b) would have required states and local franchising authorities to prescribe regulations relating to the protection of the landlord's interests, including provisions for manner of installation and just compensation.[2] Subsection (d) would have required the regulations regarding just compensation to address certain factors, including

(1) the extent to which the cable system facilities physically occupy the premises;
(2) the actual long-term damage which the cable system facilities may cause to the premises;
(3) the extent to which the cable system facilities would interfere with the normal use and enjoyment of the premises; and
(4) the enhancement in value of the premises resulting from the availability of services provided over the cable system.

*Id.* at 115. Subsection (h) would have provided that the federal right of access con-

ferred by section 633 would not apply in those situations where the landlord provided the tenant the ability to obtain a diversity of information sources equivalent to those offered by the cable system franchised to provide cable service in that given area. *See id.*

Section 633 was removed during the House-Senate conference on the bill that became the Cable Act. *See* Meyerson, The Cable Communications Policy Act of 1984: A Balancing Act on Coaxial Wires, 19 Ga.L. Rev. 543, 610 (1985). Thus, plaintiff argues that its right of access arises under section 621(a)(2), which incorporated the standards formerly included in section 633(b) regarding the cable operator's use of compatible easements. *See* section 621(a)(2)(A), (B), and (C), *supra,* for the standards formerly included in section 633(b).

As noted in the court's December 27, 1985, order denying a preliminary injunction, the congressional purpose behind section 621(a)(2) was explained in the House Report:

Subsection 621(a)(2) specifies that any franchise issued to a cable system [sic] authorizes the construction of a cable system over public rights-of-way, and through easements, which have been dedicated to compatible uses. This would include, for example, an easement or right-of-way dedicated for electric, gas or other utility transmission. Such use is subject to the standards set forth in section 633(b)(1)(A), (B), and (C). Consideration should also be given to the terms and conditions under which other parties with rights to such easements and rights-of-way make use of them. Any private arrangements which seek to restrict a cable system's use of such easements or rights-of-way which have been granted to other utilities are in violation of this section and not enforceable.

H.R.Rep. No. 934, 98th Cong., 2d Sess. 59, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4655, 4696. Thus, Congress intended *section 621(a)(2)* to create the right

---

2. Actually, Section 633 would have required only the FCC to adopt these regulations. If the state or local franchising authority failed to prescribe regulations, then the FCC regulations would apply in that locality. *See id.* at 115.

of access; section 633 merely contained the standards governing the exercise of that right. During the House-Senate conference on the bill, those standards were transferred to section 621(a)(2) when section 633 was deleted.

The issue of whether section 621(a)(2) provides for just compensation is a difficult one.[3] Section 633 had included a provision detailing a method for providing just compensation. That provision was in addition to the provisions in 633 requiring compensation for the damages caused by the installation, construction, operation, or removal of the cable facilities. Because Congress recognized that just compensation would be required when a cable operator constructed its system across an objecting landowner's property, *see Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), Congress intended section 633 to comply with the constitutional requirements. *See* H.R.Rep. No. 934, 98th Cong., 2d Sess. 80–81, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4717–18.

Congress transferred the compensation-for-damages provision to section 633. Congress did not, however, transfer the provision that outlined a method of just compensation for any taking of property that might occur. *Compare* section 633(b), (d), H.R.Rep. No. 934, at 114–15 *with* section 621(a)(2), 47 U.S.C. § 541(a)(2). One district court that considered the matter concluded that the language of section 621(a)(2) and the legislative history of the Cable Act indicate that Congress intended compensation to be paid for any taking. *See Greater Worcester Cablevision, Inc. v. Carabetta Enterprises, Inc.*, C85-2022MA (D.Mass. November 20, 1985). This court agrees with that interpretation. Therefore, the court concludes that section 621(a)(2) grants to cable franchise operators a right of access through compatible easements.

### 2. *Plaintiff's Compliance with Section 621*

Assuming plaintiff has a right of access, the court still must answer a second question: has plaintiff constructed its present system through compatible easements on defendants' property? This question must be answered in the negative.

Plaintiff points to four easements that it believes satisfy section 621. First, plaintiff claims that its present system is properly constructed through its own easement. The problem with this contention is that plaintiff's easements on the Lakes and Woodsong Apartment properties have expired by their own terms. The Lakes agreement was expressly terminated on August 28, 1985, although it apparently expired automatically on February 20, 1985. The Woodsong contract also was expressly terminated on August 28, 1985, effective October 27, 1985. Additionally, plaintiff has failed to present any argument that the analysis contained in the court's December 27, 1985, order was incorrect as to the lack of a perpetual easement under Georgia law, Off.Code Ga.Ann. § 44-9-4. Thus, plaintiff's claim that it has a right of access through its own easement cannot be accepted.

■ Plaintiff next points to the easement granted to ODC as providing plaintiff a means of access. The agreements between ODC and McNeil Fund and between ODC and Woodsong provide as follows:

> 1.1. *Right of Use of Property.* ODC shall have the right and easement to use sufficient area of the Property solely for the location of the satellite receiving equipment and the local channel antenna tower (approximately 750 square feet), which location shall be subject to owner's prior approval, together with the right of access to such areas of the property as may be reasonably necessary to maintain and service the System.

This language does not grant ODC an easement as to the entire area of both properties, as plaintiff apparently contends. Rather, the portion of ODC's easement through which plaintiff may construct its

---

**3.** If Congress did not provide for just compensation for the taking of property that might occur when a cable operator exercises its right of access, then section 621(a)(2) either (1) would be unconstitutional or (2) cannot be found to grant the access right plaintiff claims it does.

system is limited to the area actually occupied by its equipment. Section 621(a)(2) grants a right of access through *compatible* easements. ODC's access-for-maintenance easement cannot be fairly characterized as a compatible easement. Plaintiff has failed to demonstrate that its system presently is constructed through ODC's easement for placement of its equipment.

■ The third set of easements through which plaintiff contends its system is presently constructed are easements granted to Georgia Power Company. Plaintiff has failed to convince the court that these easements "are unlimited in scope and time." *See* Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment, p. 13. Therefore, plaintiff has failed to show that its system is constructed through Georgia Power's easements.

■ Finally, plaintiff argues that because both the telephone and electric companies have broad powers of eminent domain under Georgia law, *see* Off.Code Ga. Ann. §§ 22-3-20, 46-5-1, plaintiff's cable lines somehow follow these utilities' *potential* easements. This argument is without merit. If the electric or telephone company has already exercised its power of eminent domain to obtain an easement, then plaintiff may construct through that easement. Plaintiff may not, however, construct through a utility company easement that does not yet exist. Thus, the utility eminent domain statutes do not change the fact that plaintiff's cable lines do not run through compatible easements.

Accordingly, plaintiff's motion to add Woodsong Associates, Ltd. as a defendant is GRANTED. The cross motions for summary judgment are GRANTED in part and DENIED in part. Plaintiff does have a right of access under the Cable Act. To the extent that plaintiff's system does not completely follow (i.e., does not "piggyback") rights-of-way or easements, plaintiff is not properly exercising its right of access. The court will allow plaintiff 90 days to remove those sections of its system on the Lakes and Woodsong Apartments properties that do not piggyback compatible easements.