**COX CABLE COMMUNICATIONS, INC., d/b/a Cox Cable Warner Robins, Plaintiff,**

v.

**The UNITED STATES of America, et al., Defendants.**

**Civ. No. 86–79–1–MAC(DF).**

United States District Court, M.D. Georgia, Macon Division.

Nov. 14, 1988.

**918**

Terrell Wingfield, Jr., Cox Cable Communications, Inc., R. Keegan Federal, Jr. (adm), Michael D. Hays, Dow, Lohnes & Albertson, Atlanta, Ga., for plaintiff.

O. Hale Almand, Brian J. Passante, Sell & Melton, Macon, Ga., for intervenor.

Frank L. Butler, III, Asst. U.S. Atty., Macon, Ga., Vincent M. Garvey, Vaughan Finn, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendants; Joseph F. Wayland, Atty. Advisor, Dept. of the Air Force, Office of the Gen. Counsel, Pentagon, Washington, D.C., of counsel.

FITZPATRICK, District Judge.

On June 26, 1986, this court granted Plaintiff's motion for preliminary injunction and enjoined Defendants from interfering with the provision of cable television service and programming by Plaintiff at the Robins Air Force Base and the off-base housing area. For purposes of granting the injunction, the court "assumed" that Plaintiff was entitled to the renewal procedures set forth in the Cable Communications Policy Act of 1984 (Cable Act), 47 U.S.C.A. §§ 521–59 (West Supp.1988), in connection with the renewal of its franchise at the Base.[1]  Order dated June 26, 1986, p. 3.

On January 13, 1987, Plaintiff filed a motion for partial summary judgment moving the court to find as a matter of law that Plaintiff was entitled to the procedural rights set forth in the Cable Act. Defendants filed a cross-motion for partial summary judgment asking the court to find that the Cable Act does not apply to Plaintiff's franchise at the Base. In addition to these cross-motions for summary judgment, Centerville Telecable filed a motion to intervene as a party-defendant in this action. The court heard oral argument on these motions. After considering the arguments of the parties and the relevant case law and legislative history, the court issues its ruling as follows.

## I.  BACKGROUND

Plaintiff Cox Cable is the owner and operator of a sophisticated cable television system. Defendants include the United

---

1. The findings of fact and conclusions of law made by a district court when granting a preliminary injunction are not binding on the court in its subsequent determination on the merits. *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981); *United States v. Jefferson County,* 720 F.2d 1511, 1520 n. 21 (11th Cir.1983).

States, the Secretary of the Air Force, the Commander at Robins Air Force Base, and two other officers involved with the solicitation of cable television service for the Base.

In February of 1973, Cox Cable was awarded an exclusive, ten-year franchise to provide cable television service to the Base and the off-base housing area. By its terms, the franchise was to expire ten years later in February of 1983. Cox Cable was the exclusive franchisee of cable service at the Base during the time it operated under the franchise agreement.

According to certain cable television regulations in effect in 1982 and 1983, the Air Force was prohibited from simply renewing existing contracts for cable service. Instead, the Air Force was required to solicit competitive proposals for the right to provide cable service. Pursuant to the regulations, the Base Contracting Office began preparing the solicitation in October of 1982. Because of certain internal delays, however, the initial solicitation, entitled a Request for Proposal (RFP), was not issued until May 24, 1983, almost three months after Cox Cable's original franchise was to have expired. The May 24th RFP provided that the new franchise, like the one awarded to Cox Cable in 1973, would be exclusive.

Between May and August of 1983, the Air Force encountered various problems with the initial RFP. At least some of these problems arose as a result of two protests filed by Cable Equities, Inc., a prospective bidder for the franchise. Because of these problems, the Air Force cancelled the initial RFP and issued a new RFP on August 26, 1983. The new RFP also triggered various protests. After responding to the protests, the Air Force eventually set June 15, 1984, as the deadline for the receipt of bids from prospective franchisees.

Because of the delays in the solicitation process, the Air Force issued a number of temporary, short-term extensions of Cox Cable's franchise. These extensions were issued for the purpose of providing uninterrupted cable television service at the Base pending completion of the solicitation procedure, and later, installation of a new cable system. Each extension provided that all terms and conditions of the franchise contract were to "remain unchanged and in full force and effect." Amendments of Solicitation/Modification of Contract, p. 1 (attached as Exhibits 2(a)–2(f) to the Affidavit of Terrell Wingfield). Thus, the only change resulting from the extensions involved the length of time Cox Cable's franchise was to remain in effect.

On June 15, 1984, the Air Force reopened competition with new instructions, contained in an amendment to the RFP, that all offerors use the same number of connections in determining their cost component. According to Cox Cable, using the same number of connections in determining the proposals eliminated a legitimate advantage for an incumbent franchise by failing to take into consideration the costs a new cable operator would encounter in connecting new subscribers. Cox Cable submitted its final bid but protested the amendment. Six months later, on February 1, 1985, the Air Force denied Cox Cable's protest.

As of June 26, 1984, the closing date for receipt of bids, the Air Force had received bids from Cox Cable and Centerville Telecable. Cox Cable had bid $1,447,230.00, and Centerville had bid $1,483,290.00. Thereafter, in accordance with federal procurement regulations, the Air Force solicited best and final offers from the two bidders. By the July 12, 1984, closing date, both companies had submitted their final bids. Cox Cable did not change its bid of $1,447,-230.00, but Centerville lowered its bid to $1,375,062.00. Thus, as of the final closing date, Centerville was the low bidder.

According to the Air Force, the solicitation process was complete on July 12, 1984. The Air Force, however, did not award the new franchise to Centerville on July 12th, since it had not yet responded to Cox Cable's pending protest. During the time the protest was pending, Cox Cable continued to provide cable service to the Base in accordance with two short-term extensions to its franchise.

On February 22, 1985, after its protest had been denied, Cox Cable submitted a letter to the Base Contracting Office in which it asserted that since the short-term extensions had extended the life of the franchise beyond the December 29, 1984, effective date of the Cable Act, it was entitled to renewal of its franchise under section 626 of the Cable Act. Section 626 provides that an incumbent franchisee's application for renewal can be denied only if the franchising authority makes an adverse determination, after a hearing, with respect to the qualifications and service of the incumbent franchise. Realizing that it could not review Cox Cable's claim under the Cable Act before March 31, 1985, the Air Force granted another extension of the franchise to run until April 30, 1985.

In an opinion dated April 10, 1985, the Office of General Counsel of the Air Force advised the Robins Air Force Base that although the short-term extensions had extended Cox Cable's franchise beyond the effective date of the Cable Act, Cox Cable was not entitled to renewal rights under section 626. The very next day, however, Air Force Headquarters issued a memorandum that seemed to contradict the April 10th opinion. In the April 11th memorandum, the Air Force concluded that the Cable Act did apply to the Air Force since it was a franchising authority. The memorandum further stated:

> Air Force contracting offices will renew franchise agreements in accordance with the procedures set forth in the [Cable] Act. Several bases have agreements which will expire in the near future. Since the 30 to 36 month lead time provided for review by the [Cable] Act is not available, expedited procedures should be followed.

Memorandum dated April 11, 1985, ¶ 11 (attached as Exhibit 1 to the Affidavit of Terrell Wingfield).

The April 11th memorandum also indicated that Air Force franchises should be awarded on a non-exclusive basis. After becoming aware of the April 11th memorandum, the President of Centerville Telecable, Robert Watson, advised the Base Contracting Office that he had relied on the statement in the RFP that an exclusive franchise would be awarded, and had based his bid on the exclusivity of the franchise. He further indicated that he would be unable to obtain financing for Centerville's operations at the Base without the promise of an exclusive contract.

In response to Mr. Watson's concerns, the Base Contracting Office contacted the Air Force's Directorate of Contracting and Manufacturing (AF/RDC) as to whether the award of an exclusive franchise would be authorized. AF/RDC concluded that the award to Centerville Telecable was not subject to the terms of the April 11th memorandum since the solicitation process at Robins was completed in July of 1984, and, but for Cox Cable's protest, the Air Force would have awarded the franchise to Centerville before the issuance of the memorandum.[2]

Thereafter, on April 16, 1985, the Air Force informed Cox Cable that it was rejecting its request for renewal under the procedures set forth in the Cable Act. During the time the Base Contracting Office was consulting with AF/RDC concerning the April 11th memorandum, Cox Cable continued to provide cable service to the Base pursuant to the short-term extensions of its franchise. Because of certain delays in connection with awarding the franchise to Centerville, the Air Force granted Cox Cable another extension to run from April 30, 1985, to December 31, 1985.

---

2. In addition to arguing that the April 11th memorandum did not apply to the competitive bid solicitation procedure that took place at the Base, Defendants also point out that the memorandum was simply an informal, intra-agency communication that created no enforceable, legal rights. The memorandum was not prepared as part of the Air Force's formal regulations, which are published in the Federal Register in accordance with the procedures of the Defense Acquisition Regulation Council. In addition, the memorandum could be modified, superseded, or withdrawn without notice at any time by the AF/RDC, and the AF/RDC was authorized to permit a base contracting office to deviate from the terms of the memorandum under appropriate circumstances.

Following its discussions with AF/RDC, the Base Contracting Office decided to proceed with the award of an exclusive franchise to Centerville Telecable. Accordingly, in November of 1985, the Air Force awarded Centerville an exclusive, ten-year franchise to provide cable service at the Base. To permit uninterrupted service during the installation of Centerville's system, the Air Force granted a final extension of Cox Cable's franchise to run until April 30, 1986. Cox Cable filed this suit in March of 1986.

## II. DISCUSSION

A. *Cross–Motions for Summary Judgment*

The issue raised in the parties' cross-motions for summary judgment is one of statutory interpretation: whether the renewal procedures set forth in the Cable Act apply to a franchise that was in effect on the effective date of the Cable Act, but that expired within 30 months of the effective date of the Act. This court has found only one other court decision in which this issue was addressed. Therefore, the question raised in the cross-motions is one of first impression in this circuit.

Defendants raise three main arguments in support of their position that Cox Cable's franchise does not come within the protection of the Cable Act. First, Defendants contend that the Cable Act does not apply to a franchise that expired prior to the enactment of the statute and was extended past the effective date by short-term extensions to permit completion of a competitive award procedure. Second, Defendants argue that even with the benefit of the short-term extensions, Cox Cable is not entitled to the statutory renewal procedures since its franchise expired within 30 months after the Act's December, 1984 effective date. Finally, Defendants argue that the statutory renewal procedures do not apply to a franchise that was subject to an alternative, competitive, renewal procedure prior to the date of enactment of the Act. For purposes of this Order, the court finds it necessary to address only the second of these arguments, whether the Act's renewal procedures apply to a franchise that expired within 30 thirty months of the effective date of the Act.[3]

When a court interprets the meaning of a statute, it must look first to the plain language of the statute itself. *R.R. Concrete Crosstie Corp. v. R.R. Retirement Bd.*, 709 F.2d 1404, 1407 (11th Cir.1983). If the statute is in any way ambiguous, then the court must consider the statute's legislative history. *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984); *see also Train v. Colo. Public Interest Research Group, Inc.*, 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976) (legislative history considered even though statutory language appeared unambiguous on its face).

■ In deciding the issue presented in this case, the court must consider the language in two sections of the Cable Act. Section 637, entitled "Existing franchises," provides as follows:

(a) The provisions of any franchise in effect on the effective date of this subchapter ... shall remain in effect, subject to the express provisions of this subchapter....

47 U.S.C.A. § 557(a) (West Supp.1988). Section 626, which governs the renewal of franchises, provides:

(a) During the 6–month period which begins with the 36th month before the franchise expiration, the franchising authority may on its own initiative, and shall at the request of the cable operator, commence proceedings which afford the public in the franchise area appropriate notice and participation for the purpose of—

(1) identifying the future cable-related community needs and interest; and

(2) reviewing the performance of the cable operator under the franchise during the then current franchise term.

---

**3.** Since the court is addressing only Defendants' second argument, the court will assume *arguendo* that on the basis of the short-term extensions, Cox Cable's franchise was in effect on the effective date of the Act and subject to the provisions of the Act.

(b)(1) Upon completion of a proceeding under subsection (a) of this section, a cable operator seeking renewal of a franchise, may, on its own initiative or at the request of a franchising authority, submit a proposal for renewal.

47 U.S.C.A. § 546(a), (b)(1) (West Supp. 1988).

A strict reading of the language in these two sections would result in the conclusion that Cox Cable is not entitled to the renewal procedures of the Act. Section 637 provides that franchises in existence at the time of enactment are subject to the "express provisions" of the Act. Section 626(b), an express provision, provides that an incumbent franchise can submit a request for renewal only after the public notice proceedings set forth in section 626(a) have been completed. Section 626(a) requires that the public proceedings occur during the 30 to 36 month period before the franchise expiration. Since Cox Cable's franchise expired on April 30, 1986, only 16 months after the date of enactment of the statute, it could not have satisfied the time requirements expressly set forth in section 626.[4]

Although the language of these two sections appears clear on its face, the court finds that the Act is ambiguous in that it does not set forth what procedures, if any, are to be used in connection with a franchise, such as Cox Cable's, that expires within 30 months of the date of enactment of the statute. Because of this ambiguity, the court must consider the legislative history of the Act. Even though the legislative history itself is not clear on this point, the court finds that the legislative history does support the conclusion that the renewal procedures in the Act do not apply to a franchise that expires within 30 months of the effective date of the Act.

The relevant portion of the legislative history provides as follows:

This section contains no transitional provision for those franchises which expire thrity [sic] months or fewer *before* the date of enactment of the bill. The obligations imposed by section 636 [sic] are not intended to apply retroactively where a frachise [sic] due for renewal whitin [sic] this period has commenced renewal proceedings (not inconsistent with the terms of the franchise) prior to the date of enactment.

H.Rep. No. 98–934, 98th Cong., 2d Sess., p. 72, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4655, 4709 (emphasis added). If the word "before" in the above-quoted statement was "after," there would be no question that Cox Cable would not be entitled to the renewal provisions of the Cable Act. Defendants argue, however, and this court agrees, that if this statement in the legislative history is to make sense, the word "before" must be read as "after." If the word "before" is used, then the statement would mean that Congress did not intend the renewal provisions to apply to franchises that expired as much as 2½ years before the effective date of the Act. Such a conclusion is obvious. It is very likely that many franchises across the country that expired before the effective date of the Act were replaced by different franchises. Certainly Congress did not need to clarify the point that the Act did not apply to franchises that had been replaced by other franchises before the Act came into effect. Such an interpretation would mean that Congress contemplated a retroactive application of the Act that would allow franchises that had been replaced to have the opportunity to oust those franchises that had legitimately replaced them and are now operating under new franchise agreements. Thus, reading the word "before" in the statement would

4. Cox Cable argues that under section 626(h), it could have submitted a renewal proposal "at any time," thus avoiding the strict time deadlines set forth in section 626(a). The renewal protections Cox Cable is seeking, however, are not available to a franchise submitting a renewal proposal under section 626(h). Section 626(h) expressly provides that a franchising authority may deny a renewal request submitted under subsection (h) without affording the franchise the renewal procedure protections set forth in subsections (a) through (g). Thus, the very procedures Cox Cable argues it is entitled to would not have been available had Cox Cable submitted its request for renewal under section 626(h).

mean that franchises that expired 2½ years ago would now be entitled to renewal protection under the Act. The more logical interpretation of the statement, and the one this court will follow, is that there is no transitional provision for franchises that expire within 30 months *after* the effective date of the statute.

This court's interpretation of the statute and its legislative history is supported by the only other court decision addressing this issue and by at least one scholarly article. In *Madison Cablevision, Inc. v. City of Morganton*, SH–C–86–5 (W.D.N.C. July 9, 1986) (unpublished decision), Judge Jones of the Western District of North Carolina found that the renewal provisions of the Cable Act did not apply to a cable operator whose franchise expired in October of 1986, 22 months after the effective date of the Act. Judge Jones' Order stated:

> As of [the effective date of the Act] there was insufficient time to conduct franchise renewal proceedings pursuant to the timetable of 47 U.S.C.A. § 546. Congress provided for no transitional renewal provisions for those franchises which were already within 30 months of expiration as of the effective date of the Act. Failure to provide for such situations was not simply an oversight. The legislative history of the Cable Act shows that the House Committee was aware that the Act contained no transitional renewal provision. H.Rep. No. 934, 98th Cong., 2d Sess. at 72 (1984). The legislative history further shows that the renewal provisions were not meant to apply retroactively where a franchise due for renewal less than 30 months after passage of the Act was already subject to renewal proceedings prior to enactment. *Id.*

*Madison Cablevision*, p. 7.

*Madison Cablevision* is similar to the case before this court. As of the Act's effective date, Cox Cable's franchise was due to expire on March 31, 1985, approximately 3 months following enactment. Following three additional short-term extensions, Cox Cable's franchise eventually did expire on April 30, 1986, only 16 months after the effective date of the Act. Moreover, like the franchisee in *Madison Cablevision*, Cox Cable was subject to renewal proceedings on the date the Act became effective.

In addition to this district court opinion, at least one commentator has suggested that the word "before" in the relevant portion of the legislative history should be read as "after." In a recent article in the Georgia Law Review, Professor Michael Meyerson made the following observation:

> [Section 626(a) of the Cable Act] does not cover franchises that expire within 30 months of the effective date of the Act. The House Report states that this section does not apply to "those franchises which expire [thirty] months or fewer before the *date of enactment* of the bill." This interpretation (assuming the Report meant *after* the date of enactment) would leave a two month gap, created by the difference between the date of enactment and the effective date of the Act, which is 60 days later, on December 29, 1984. A cable company could not have invoked the procedures of this section of the Act before the Act itself became effective. *Thus, the more logical interpretation is that a franchise that expires within 30 months or fewer of the effective date of the Act is governed solely by the franchise and local law.*

Meyerson, *The Cable Communications Policy Act of 1984: A Balancing Act on the Coaxial Wires,* 19 Ga.L.Rev. 543, 580 n. 223 (1985) (citations omitted) (emphasis added).

In a case dealing with the interpretation of another federal statute, the Ninth Circuit recognized that "[i]t is always possible that Congress did not quite mean what it said and did not quite say what it meant." *Pettis v. Morrison–Knudsen Co., Inc.,* 577 F.2d 668, 671 (9th Cir.1978). This court, agreeing with Judge Jones and Professor Meyerson, finds that when Congress, in its legislative history, said that the renewal provisions of the Act would not be available to franchises expiring thirty months or fewer "*before* the date of enactment of the

bill," it meant to say such provisions would not be available to franchises expiring within 30 months *after* the date of enactment of the bill." Accordingly, the court finds that Cox Cable was not entitled to the renewal provisions of the Cable Act in connection with its franchise at Robins Air Force Base. Therefore, summary judgment is hereby GRANTED in favor of Defendants on those claims brought by Cox Cable under the Cable Act.[5]

### B. *Motion to Intervene*

■ Centerville Telecable argues that it is entitled to intervene as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure, or in the alternative, permissively under Rule 24(b)(2). Cox Cable opposes Centerville's request to intervene as a matter of right by arguing that Centerville's interests are, and have been, adequately protected by the Defendants now in the case. The court need not address Centerville's request to intervene under Rule 24(a) since the court finds that permissive intervention is warranted in this action.

Rule 24(b)(2) provides that a party may be permitted to intervene if the party's "claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b)(2). Granting a motion for permissive intervention under Rule 24(b)(2) is within the sound discretion of the trial court. *Sellers v. United States,* 709 F.2d 1469, 1471 (11th Cir.1983). In exercising that discretion, the district court must consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R. Civ.P. 24(b)(2).

Cox Cable brought this action contesting the competitive bid procedure that eventually led to an award of the cable service franchise at Robins Air Force Base to Centerville Telecable. In addition to its claim under the Cable Act, Cox Cable has contended that certain of its constitutional rights were violated as a result of the franchise being awarded to Centerville. Both Centerville and Defendants argue that the competitive bid procedure was legitimate and constitutionally sound. Thus, Centerville's defense and the main action have several questions of law and fact in common.

The court further finds that permitting Centerville to intervene will not unduly delay or prejudice the adjudication of the rights of the original parties in this case. Although some discovery has been completed, discovery has been stayed for several months pending the court's ruling on the issue raised in the cross-motions for summary judgment. Moreover, the case has been narrowed by the dismissal of the Cable Act claim, and Centerville's position on the remaining claims will be similar to the position taken by the Defendants now in the case.

Finally, after balancing the four factors set forth in *United States v. Jefferson County,* 720 F.2d 1511, 1516 (11th Cir.1983) for determining the timeliness of intervention, the court finds that the balance weighs in favor of allowing the intervention. The existing parties have suffered no prejudice as a result of Centerville's failure to intervene, while Centerville could be subjected to significant prejudice if its franchise contract is modified or terminated as a result of this court's refusal to allow it to defend its interests in the franchise in this litigation. Thus, the court finds that Centerville's motion for intervention is timely and will not unduly delay the adjudication of this suit.

Accordingly, the court hereby GRANTS Centerville Telecable's motion to intervene under Federal Rule of Civil Procedure 24(b)(2). The court is of the opinion that the parties can reach some type of arrangement to avoid the unnecessary duplication of any discovery that has been completed up to this point in the litigation.

### III. CONCLUSION

In sum, the court finds that Cox Cable is not entitled to the renewal provisions set

---

**5.** Defendants also ask this court to grant summary judgment in their favor on all claims based on the April 11, 1985, memorandum. This order, however, addresses only those claims asserted under the Cable Act.

forth in section 626 of the Cable Act. Accordingly, Defendants' motion for partial summary judgment on the Cable Act claim is hereby GRANTED, and Plaintiff's motion for partial summary judgment is DENIED. The court also finds that Centerville's defense possesses questions of law and fact that are directly related to the main action, and that Centerville's intervention will not unduly delay the proceedings in this case or unduly prejudice the original parties. Therefore, Centerville's motion for permissive intervention under Rule 24(b)(2) is hereby GRANTED.

SO ORDERED.