**CENTEL CABLE TELEVISION COMPANY OF FLORIDA,**
Plaintiff-Appellant,

v.

**ADMIRAL'S COVE ASSOCIATES, LTD., et al., Defendants-Appellees.**

No. 87-5463.

United States Court of Appeals, Eleventh Circuit.

Jan. 19, 1988.

the legislature to decide what policy is most effective and fair.

**1360**

Terry S. Bienstock, Philip J. Kantor, Frates Bienstock & Sheehe, Miami, Fla., for plaintiff-appellant.

Paul Glist, Cole, Raywid & Braverman, Washington, D.C., for Florida Cable Television, Ass'n, Inc.

Howard Graff, Bloch, Graff, Danzig & Helline, New York City, for Cable Holdings of Georgia.

E. Cole Fitzgerald, III, Moyle, Flanigan, Katz, Fitzgerald & Sheehan, P.A., Thomas A. Sheehan, III, West Palm Beach, Mark J. Tauber, Piper & Marbury, Washington, D.C., for defendants-appellees.

Before FAY and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

FAY, Circuit Judge:

Centel Cable Television Company of Florida ("Centel") moved for a preliminary injunction under section 621(a)(2) of the Cable Communications Policy Act of 1984, 47 U.S.C. § 541(a)(2) (Supp. III 1985) ("section 621(a)(2)") to allow it to provide cable television to a new residential community.[1] The district court judge dismissed the case on the basis that there was not an implied private right of action for section 621(a)(2). Since we believe that Congress intended a private right of action, we reverse the district court and remand for further proceedings.

## I. BACKGROUND

Centel alleges that the Town of Jupiter, Florida granted it a franchise to provide cable services.[2] Currently, Admiral's Cove Associates, Ltd. ("Admiral's Cove") is constructing a residential community within the franchise area. Prior to construction, Admiral's Cove recorded plats listing easements for telephone and electric utilities. The utilities have already begun to lay their cables in the easements.

Centel attempted to place its cables in these same easements. Admiral's Cove, however, prohibited Centel from laying the cables. Centel became concerned that Admiral's Cove prevented its access to the easements in order to negotiate an exclusive deal with a competing company to provide cable to the future residents. Also

---

1. Section 621(a)(2) states:

(2) Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses, except that in using such easements the cable operator shall ensure—

(A) that the safety, functioning, and appearance of the property and the convenience and safety of other persons not be adversely affected by the installation or construction of facilities necessary for a cable system;

(B) that the cost of the installation, construction, operation, or removal of such facili-

ties be borne by the cable operator or subscriber, or a combination of both; and

(C) that the owner of the property be justly compensated by the cable operator for any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator.

2. Since the district court dismissed the case for failure to state a cause of action, we must treat all the factual allegations in the complaint as true. *See Brown v. Housing Auth. of the City of McRae*, 784 F.2d 1533, 1536 (11th Cir.1986) (per curiam).

concerned that installation costs would rise if it did not act quickly, Centel sought a preliminary injunction allowing it to place its cables in the easements.[3] The basis for Centel's claim rested on section 621(a)(2), which authorizes cable franchises to construct cable systems through easements dedicated for compatible uses. The district court, after an expedited hearing, found that section 621(a)(2) did not provide Centel with a cause of action and dismissed the complaint. Centel appeals.

## II. DISCUSSION

■ In determining whether there is an implied cause of action under a federal statute, we are really determining whether Congress intended to provide a cause of action. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979); *Dime Coal Co. v. Combs*, 796 F.2d 394, 398 (11th Cir.1986). To aid us in eliciting this congressional intent, the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), identified four relevant factors.

First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so

that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (citations omitted). For section 621(a)(2), each of the four factors indicates a congressional desire to provide a cause of action. We will now fully discuss each *Cort* factor in turn.

### A. Does the Statute Create A Federal Right in Favor of Centel?

■ The Cable Communications Policy Act of 1984 ("Cable Act") is essentially a compromise. 130 Cong.Rec. H10,442 (daily ed. Oct. 1, 1984) (statement of Rep. Dingell). *See also* Meyerson, *The Cable Communications Policy Act of 1984: A Balancing Act on Coaxial Wires*, 19 Ga.L. Rev. 543, 545–46 (1985). To pass the legislation Congress had to balance the public's right to free flowing information, the local government's interest in franchising and regulating cable operators, the cable industry's desire for growth and stability, and the potential of satellite television to offer valuable competition. As a result of careful work and compromise, the Cable Act ultimately gained the support of the two principal, competing groups behind the bill —the cities and the cable industry. 130 Cong.Rec. H10,435 (daily ed. Oct. 1, 1984) (statement of Rep. Wirth). The desire to "establish franchise procedures and standards which encourage the growth and development of cable systems" was one of the main purposes of the Cable Act that emerged. 47 U.S.C. § 521(2) (Supp. III 1985).[4]

---

3. Centel also brought a claim under state law against Admiral's Cove for tortious interference with business. The trial court dismissed the state tort claim for lack of jurisdiction once it disposed of the federal section 621(a)(2) claim. Since we reverse the disposition of the federal claim, the trial judge should reconsider its jurisdiction over the state tort claim.

4. The purposes of [the Cable Act] are to—
    (1) establish a national policy concerning cable communications;
    (2) establish franchise procedures and standards which encourage the growth and development of cable systems and which assure that cable systems are responsive to the needs and interests of the local community;

    (3) establish guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems;
    (4) assure that cable communications provide and are encouraged to provide the widest possible diversity of information sources and services to the public;
    (5) establish an orderly process for franchise renewal which protects cable operators against unfair denials of renewal where the operator's past performance and proposal for future performance meet the standards established by this subchapter; and
    (6) promote competition in cable communications and minimize unnecessary regulation that would impose an undue economic burden on cable systems.

■ To help encourage the growth of cable systems, section 621(a) authorizes all cable franchises to lay their wires along utility easements.[5] This authorization provides a right of access for all franchise operators. *See Cable Holding of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.,* 678 F.Supp. 871–873 (N.D.Ga.1986). While the Cable Act taken as a whole grants many benefits to many groups, section 621(a)(2), as part of the compromise package, provides its particular benefit only to the cable franchise. Whenever a statute grants a specific right to a particular class of persons, the Supreme Court usually finds an implied right of action. *Cannon v. University of Chicago,* 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 1954 n. 13, 60 L.Ed.2d 560 (1979). Because Congress enacted section 621(a)(2) for cable franchises' *especial* benefit, it is likely that Congress intended to provide a cause of action to cable franchises.

### B. Does the Legislative History Show an Intent to Provide a Cause of Action?

As discussed earlier, one of the principle purposes behind the Cable Act was to encourage the growth of cable industries. The legislative history of the Cable Act gives further evidence of this purpose.

By establishing a national framework and Federal standards for cable franchising, [the Cable Act] provides the cable industry with the stability and certainty that are essential to its growth and development. In adopting this legislation, the Committee has endeavored to create an environment in which cable will flourish, providing all Americans with access

to a technology that will become an increasingly important part of our national communications network.

Legislative History, *supra* note 5, at 20, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4655, 4657; *see also* 130 Cong. Rec. S14,283 (daily ed. Oct. 11, 1984) (statement of Sen. Packwood expressing the need to help cable achieve its full potential and compete in the marketplace). We believe that if Congress truly desired the cable industry to flourish, then it would permit a cable franchise to enforce its right to lay cable along utility easements through the courts.

The legislative history also shows that Congress forbade any private agreements which would prevent a cable franchise from using the utility easements. Legislative History, *supra* note 5, at 59, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4655, 4696. Congress' prohibition of certain conduct helps indicate a congressional intent to provide a private right of action. *See Touche Ross,* 442 U.S. at 569, 99 S.Ct. at 2485. We believe it unlikely that Congress would prevent a developer such as Admiral's Cove from making a deal with a third party which would prohibit the cable franchise's use of the easements without enabling the cable franchise to go to court to enforce its right.[6]

### C. Is a Private Right of Action Consistent with the Statutory Scheme?

Admiral's Cove vigorously argues that allowing a cable franchise to sue under section 621(a)(2) would contradict the Cable Act's regulatory scheme. Admiral's Cove claims that a cable franchise must petition

---

47 U.S.C. § 521 (Supp. III 1985).

**5.** Section 621(a)(2) authorizes the cable franchise to use easements "which have been dedicated for compatible uses." 47 U.S.C. § 541(a)(2) (Supp. III 1985). The legislative history informs us that Congress intended to authorize the cable operator to "piggyback" on easements "dedicated for electric, gas or other utility transmission." H.R.Rep. No. 934, 98th Cong., 2d Sess. 59 [hereinafter Legislative History], *reprinted in* 1984 U.S.Code Cong. & Admin. News 4655, 4696.

**6.** We note that an early House version of the Cable Act contained a section 633 which with some exceptions forced any landlord to allow the rewiring of his building for cable when a tenant requested cable television. This unratified section may have provided the tenant with a cause of action if the landlord did not permit access to cable television. *See* Legislative History, *supra* note 5, at 79–80, *reprinted in* U.S.Code Cong. & Admin.News 4655, 4716–17. We find no evidence, however, that by failing to ratify Section 633, Congress intended to prohibit a private right of action under section 621(a)(2) to cable operators.

the franchising agent, usually the city government, to sue the developer on the cable franchise's behalf when section 621(a)(2) has been violated. Admiral's Cove arrives at this position by arguing that Congress only authorized cable franchises to place their cables in publicly owned easements rather than utility easements.[7] Admiral's Cove then asserts that the owner of the public easements will usually be the franchising agent and, as the owner of the easement, is best qualified to litigate over access to the easement. We disagree with this line of reasoning for several reasons.

First, we find the determination by Admiral's Cove that Congress authorized Centel's use of public easements but not easements dedicated for use by utilities to be contrary to the legislative history of the Cable Act.[8] Second, it strikes us as odd that Congress would want the regulator of a cable franchise to also serve as its champion litigator. We are unconvinced that Congress believed a local government would choose to spend its tax revenues fighting for the rights of the cable franchise as willingly as the franchise owner would fight for its own rights. It appears to us that to effectively foster the growth of a national cable industry, Congress would place the right to sue in the hands of the party most interested in the rights of the cable franchise. Third, the argument by Admiral's Cove that Congress intended to grant local government rather than cable franchises the ability to sue under section 621(a)(2) assumes that local governments have a right of action under section 621(a)(2). The Cable Act, however, does not expressly contain a cause of action in favor of local governments. An examina-

tion of the Cable Act produces less evidence establishing by implication a right of action in favor of local governments than in favor of the cable franchise. Because there is more evidence establishing an implied right of action for the cable franchise, it would be anomalous to find an implied right of action in favor of the franchising authority and yet deny that right to cable franchises.[9]

■ In addition, we note that Congress did not expressly provide an administrative scheme that enables cable franchises to use the utility easements. It follows that an implied right of action under section 621(a)(2) does not create any disturbances with the remedial scheme of the Cable Act. Precedent indicates that the Supreme Court is more likely to allow a private remedy where Congress provides a benefit but does not provide access to any type of administrative process. *See Cannon*, 441 U.S. at 706 n. 41, 99 S.Ct. at 1962 n. 40. We find, therefore, that the third *Cort* factor also indicates a congressional willingness to provide a private right of action.

## D. Is This Cause of Action Traditionally Relegated to State Law?

An important objective of the Cable Act was to alleviate the patchwork of federal, state and local laws and regulations that hampered the growth of cable television. 180 Cong.Rec. S14,288 (daily ed. Oct. 11, 1984) (statement of Sen. Goldwater); 130 Cong.Rec. H10,435 (daily ed. Oct. 1, 1984) (statement of Rep. Wirth). Congress intended the Cable Act to provide uniformity. Although a few states gave cable compa-

---

**7.** Admiral's Cove assumes that Congress could not authorize a cable franchise to use utility easements because such an authorization would be an unconstitutional taking under *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). Since most developers voluntarily grant easements for use by utilities, however, Congress may force the developer to allow a cable franchise to use the easement without offending the taking cause of the Constitution. *See FCC v. Florida Power Corp.*, —— U.S. ——, 107 S.Ct. 1107, 94 L.Ed.2d 282 (1987). Such "voluntary"

action by developers may be an integral part of zoning procedures or the obtaining of necessary building permits. However obtained, once an easement is established for utilities it is well within the authority of Congress to include cable television as a user.

**8.** *See supra* note 5.

**9.** Of course, we do not decide today whether or not a franchising authority also has an implied right of action under section 621(a)(2).

nies a right of access,[10] these laws were uncommon. We do not believe that Congress intended that the cable industry insure its growth by relying on state access laws when the majority of states had not passed such laws. In our view, the fourth *Cort* factor does not counsel against a cause of action.

### III. CONCLUSION

Upon analyzing section 621(a)(2) under the four factors of *Cort v. Ash,* we determine that Congress intended to provide a cause of action to cable franchises. Our analysis is consistent with every federal court that has considered section 621(a)(2). *Rollins Cablevue, Inc. v. Saienni Enterprises,* 633 F.Supp. 1315 (D.Del.1986); *Cable Holding of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.,* 678 F.Supp. 871 (N.D.Ga.1986); *Greater Worcester Cablevision, Inc. v. Carabetta Enterprises, Inc.,* 85–2022–MA (D.Mass.1985) [Available on WESTLAW, 1985 WL 17,376]. We reverse the district court's dismissal of Centel's suit and remand for further proceedings consistent with this opinion.

---

10. *See e.g., Rollins Cablevue, Inc. v. Saienni Enterprises,* 633 F.Supp. 1315 (D.Del.1986); *Ocean Cablevision Associates v. Hovbilt, Inc.,* 210 N.J. Super. 626, 510 A.2d 308 (1986); Ill.Rev.Stat. ch. 24 ¶ 11–42–11.1 (1985); Minn.Stat. §§ 238.35–238.42 (1986).