**CABLE TV FUND 14–A, LTD. d/b/a Jones Intercable, Plaintiff,**

v.

**PROPERTY OWNERS ASSOCIATION CHESAPEAKE RANCH ESTATES, INC. and Chesapeake Ranch Water Company, Defendants,**

and

**North Star CATV Services, Inc. and North Star Cable Television Company of Maryland, Inc., Intervening Defendants.**

Civ. No. H–89–17.

United States District Court, D. Maryland.

Feb. 14, 1989.

Brent N. Rushforth, and Dow, Lohnes & Albertson, Washington, D.C., and Michael A. Pace, Dow, Lohnes & Albertson, Annapolis, Md., for plaintiff.

William D. Coston, Mark J. Palchick, and Bishop, Cook, Purcell & Reynolds, Washington, D.C., and John C. Prouty, Huntington, Md., for defendants and intervening defendants.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Chief Judge.

The essential dispute in this civil action is between two competing cable television companies which seek to provide cable service to residents of a development in Calvert County, Maryland. Plaintiff Cable TV Fund 14–A, Ltd. (hereinafter "Cable TV Fund") has filed a complaint seeking declaratory and injunctive relief pursuant to § 621(a)(2) of the Cable Communications Policy Act of 1984 (hereinafter "the Cable Act"), 47 U.S.C. § 541(a)(2) (Supp. III 1985). Plaintiff is here asking this Court to grant relief which would permit plaintiff to construct and operate a cable television service within the residential community known as the Chesapeake Ranch Estates.

Plaintiff Cable TV Fund is a Colorado limited partnership with its principal place of business in Denver, Colorado. It provides cable television service to consumers in the State of Maryland and in Calvert County as Jones Intercable, Inc. (hereinafter "Jones Intercable"). Jones Intercable, which is the general partner of Cable

TV Fund, is a diversified telecommunications company that has its headquarters and its principal place of business in Denver, Colorado.

Two parties are named as defendants in the complaint. Defendant Property Owners Association Chesapeake Ranch Estates, Inc. (hereinafter "the Property Owners Association") is a Maryland corporation with its principal place of business in Calvert County. The Property Owners Association is the developer of the Chesapeake Ranch Estates (hereinafter "the Estates"), a private residential community of approximately 900 homes in the southern part of Calvert County. The Property Owners Association owns all the common areas, including all roads and byways, within the Estates. Defendant Chesapeake Water Company (hereinafter "the Water Company") is a corporation organized under the laws of Maryland with its principal place of business in Calvert County. The Water Company's major business is the operation of the water system within the Estates.

Two additional parties have been permitted to intervene.[1] Defendants North Star CATV Services, Inc. (hereinafter "North Star") and North Star Cable Television Company of Maryland, Inc. (hereinafter "North Star–Maryland") are both Tennessee corporations qualified to do business within the State of Maryland. North Star–Maryland is owned by the controlling stockholder of North Star and was organized specifically to build, own and operate cable television systems in Maryland.

On January 4, 1989, plaintiff filed its complaint in this Court together with a motion for a temporary restraining order. By that motion, plaintiff sought to enjoin the Property Owners Association and the Water Company from taking any action to prevent Jones Intercable from gaining access to the Estates for the purposes of constructing, marketing and operating a cable television system therein. Plaintiff is not in this suit asking that it have the exclusive right to provide cable service to residents of the Estates. Rather, it is asking merely that it be permitted to compete with North Star–Maryland within the development.

A brief hearing was held on January 4, 1989 before Senior Judge Herbert N. Maletz who granted plaintiff's motion for a temporary restraining order and required plaintiff to file a bond of $10,000. Pursuant to Rule 65(c), F.R.Civ.P., the temporary restraining order entered by Judge Maletz was to expire ten days later on January 14, 1989.

The case was then assigned to the undersigned judge who held a status conference on January 12, 1989. After hearing from counsel, the Court granted the motion of defendant Property Owners Association to dissolve the temporary restraining order which had previously been entered in the case. In order that the *status quo* might be maintained until the Court had ruled on plaintiff's motion for a preliminary injunction, the dissolution of the temporary restraining order was subject to the proviso that defendants and intervenors would not perform any work for the purpose of constructing a cable system in the Estates until further Order of Court. A briefing schedule was established and a hearing date set in connection with plaintiff's request for a preliminary injunction.

Pursuant to the schedule set by the court on January 12, 1989, plaintiff filed a motion for a preliminary injunction.[2] Plaintiff also filed a motion for leave to file a motion for summary judgment, a motion for shortening of filing times, and a proposed motion for summary judgment. Defendants in turn filed a motion to dismiss for lack of standing and a motion to dismiss for failure to join an indispensable party. The Court granted plaintiff's motion for leave to file a motion for summary judgment but

---

1. On January 13, 1989, this Court entered an Order granting the motion of North Star CATV Services, Inc. and North Star Cable Television Company of Maryland, Inc. to intervene as parties defendant.

2. Plaintiff had also filed, pursuant to Rule 65(a)(2), F.R.Civ.P., a motion for consolidation of the trial on the merits with the hearing on plaintiff's application for a preliminary injunction. The Court has denied this motion.

denied plaintiff's motion for the shortening of time for defendants to respond to that motion. The Court reserved ruling on the motion for summary judgment until full briefing had been completed. Presently before the Court for decision are defendants' motions to dismiss and plaintiff's motion for a preliminary injunction.

Extensive memoranda as well as accompanying exhibits and affidavits in support of and in opposition to the pending motions have been submitted by the parties. A hearing has been held in open Court on January 31, 1989. For the reasons to be stated herein, defendants' motions to dismiss will be denied, and plaintiff's motion for a preliminary injunction will be granted.

I

*Factual Background*

This case has a long and complex history which spans almost five years. Plaintiff obtained whatever rights it now asserts through a predecessor-in-interest. The Board of County Commissioners of Calvert County (hereinafter "the County Commissioners"), is the applicable governing body of the County. Although not a party here, the County Commissioners have been involved in prior litigation with some of the parties to this civil action or their predecessors.

On April 1, 1984, Rite Cable Company of Maryland, Ltd. (hereinafter "Rite Cable") filed an application with the County Commissioners seeking a franchise to construct and operate a cable television system for all unincorporated areas of the County. When Rite Cable submitted its application, one of the maps included as a part of the application contained every street within the Estates development. On July 31, 1984, Rite Cable received a non-exclusive franchise [3] from the County Commissioners to construct and operate a cable system within the unincorporated areas of the County. Rite Cable began construction of a cable system in Calvert County in the fall

of 1984, and cable television service was begun in April of 1985.

In 1987, Rite Cable transferred its entire interest in the cable franchise to Jones Intercable. The County Commissioners approved this transfer on April 14, 1987. Later in 1987, Jones Intercable transferred its interest in the franchise to plaintiff Cable TV Fund, and this transfer was likewise later approved by the County Commissioners. Based on these facts, plaintiff asserts that it now has a non-exclusive franchise to construct and operate a cable system in all unincorporated portions of the County, including the area comprising the Estates.

The Estates is a private residential community of approximately 900 homes in Lusby, Maryland, which is located in the southern part of Calvert County. The Estates was developed by Chesapeake Ranch Club, Inc. (hereinafter "Chesapeake Ranch Club"), the predecessor in interest of defendant Property Owners Association. The Estates consists of approximately 7000 lots, only some of which are presently occupied by private residences. All common areas, including roads and byways, continue to be owned, managed and controlled by defendant Property Owners Association.

In the fall of 1984, Rite Cable commenced negotiations with the Chesapeake Ranch Club in an effort to secure the developer's assistance in laying cable wire in and providing service to the development. These negotiations were not successful. Rite Cable was informed in June of 1985 that the Chesapeake Ranch Club would not permit it to enter the Estates to offer cable service and that the Chesapeake Ranch Club intended to build and operate its own cable system. In a letter dated June 11, 1985 addressed to a County Commissioner, a representative of Rite Cable noted that the Chesapeake Ranch Club would not permit Rite Cable to enter its property and stated that Rite Cable respected the owner's right to deny access to the property. However, Rite Cable questioned the right

---

**3.** An Ordinance of Calvert County specifically prohibits the granting by the County of an exclusive franchise to provide cable television service. *See* Ordinance to Establish a Cable Television Franchise, Section 4.00, effective July 24, 1984.

of any other cable company to provide cable service in the County without a franchise and requested a clarification concerning what non-franchised cable companies could do in the County.

At or around that time, Chesapeake Ranch Club had established its own entity, Chesapeake Shores Cablevision, Inc., in order to facilitate the installation of a cable system within the confines of the Estates. Chesapeake Shores Cablevision, Inc. entered into a partnership with a cable company known as Laxton CATV, Inc. for purposes of installing and operating a cable system in the Estates. In 1985, work was begun by these entities for the laying of cable lines in the Estates under roads owned by the Chesapeake Ranch Club.

In a Memorandum dated July 30, 1985, County Attorney Allen S. Handen advised the County Commissioners that in his opinion the County had no authority to franchise a cable company in the Estates because there were no "public rights of way"[4] in the development. He further opined that the Chesapeake Ranch Club would need a franchise to operate a cable company and that the Chesapeake Ranch Club could not grant to itself a franchise for that purpose.

Although aware of the opinion of the County Attorney, Chesapeake Shores Cablevision and Laxton CATV continued to install cable wiring within the confines of the Estates. Not surprisingly, litigation ensued. On or about December 11, 1985, the County Commissioners brought suit in the Circuit Court for Calvert County seeking to enjoin such installation. *County Commissioners of Calvert County v. Chesapeake Shores Cablevision, Inc.* (No. 85–654). On February 6, 1986, Laxton CATV and Chesapeake Shores Cablevision filed a civil action in this Court naming as defendants both Rite Cable and the County Commissioners, seeking declaratory relief and damages for interference with free speech, violations of the antitrust laws and tortious interference with contractual rela-

tions. *Laxton CATV, Inc. v. Rite Cable Co. of Maryland, Inc.* (D.Md. S–86–433).

On April 23, 1987, Laxton CATV and Chesapeake Shores Cablevision entered into a Consent Agreement with the County Commissioners in the state court action. Rite Cable was not a party to this Agreement. Under the terms of this document which was filed as a pleading in the state case but not in the federal case, the County Commissioners agreed not to interfere with the installation of a cable system within the confines of the Estates. However, the County Commissioners retained the right to enforce county regulations relating to the granting of a cable franchise except for the collection of a franchise fee. The Consent Agreement further provided that "any franchisee selected by Chesapeake Ranch Club, Inc. to install a SMATV [Satellite Master Antenna Television] or cable television system within the Ranch Club will be deemed to have been granted a franchise by both the county and the Ranch Club *to the extent that either has that authority* ...." (Emphasis added). The parties expressly recognized that the initial selection by Chesapeake Ranch Club of defendant North Star as its cable franchise would not require further approval by the County. Laxton CATV and Chesapeake Shores Cablevision agreed to dismiss, with prejudice, their action pending in this Court.

Pursuant to the Consent Agreement, the Property Owners Association entered into a Franchise Agreement with North Star–Maryland on June 29, 1988. The Property Owners Association granted to North–Star Maryland "the *exclusive* rights and privileges to enter upon the [Estates] and to install, construct, operate ... a cable television system or SMATV system." (Emphasis added). Based on this document, defendants assert that only North Star–Maryland has the right to provide cable service to residents of the Estates.

Meanwhile, plaintiff continued to install cable within other portions of Calvert

---

4. Mr. Handen was of the view that the state's enabling statute, Md.Ann.Code art. 25, § 3C, which permits the County to franchise cable systems that utilize "any public right-of-way," did not encompass a cable operator's use of public utility easements. The County Attorney made no reference in that opinion to applicable provisions of § 621(a)(2) of the Cable Act.

County pursuant to the franchise it had received from the County Commissioners. Jones Intercable has since laid approximately 400 miles of cable in the County, and it presently serves about 6000 subscribers. In December of 1988, Jones Intercable contacted the Property Owners Association seeking access to the Estates for the purpose of laying cable wire. However, the Property Owners Association indicated that it would deny Jones Intercable such access. Similarly, the Water Company informed Perry Communications, Inc., the contractor which plaintiff had hired to install the necessary cable wiring, that it would not assist in locating water lines in the development.

Electric and telephone service to residents of the Estates is provided by Southern Maryland Electric Cooperative, Inc. and C & P Telephone Company, Inc. These public utilities have easements through and along the roads and byways of the Estates permitting them to provide such service. In 1984, Rite Cable, plaintiff's predecessor, had entered into agreements with these public utilities permitting it to make use of these easements for construction of a cable television system in various parts of Calvert County.

Relying on the agreements which had been reached with these public utilities, plaintiff in December, 1988 directed its contractor to proceed with the necessary work at the Estates. On January 3, 1989, employees of Perry Communications commenced work on premises of the Estates and began laying cable wiring. Since the Water Company had refused to tell plaintiff's contractor where its water lines in the development were, a line was nicked during the day. Plaintiff then ordered its contractor to stop work and filed this civil action. With its complaint, plaintiff filed a motion for a temporary restraining order which would permit plaintiff to proceed with the laying of cable wiring on premises of the Estate.

The temporary restraining order entered by Senior Judge Maletz on January 4, 1989 enjoined the Property Owners Association from denying plaintiff access to the Estates in order to install cable television service, and required the Water Company to assist plaintiff in locating the water lines in the Estates. Plaintiff's contractor resumed work at the Estates the next day.

At the conference held before the undersigned judge on January 12, 1989, defendants contended that North Star–Maryland had an exclusive cable television franchise within the Estates and that plaintiff had no right to enter the premises. Defendants indicated that they intended to move to dismiss the complaint. In view of the conflicting positions of the parties, the Court, after hearing argument of counsel, entered an Order permitting North Star and North Star–Maryland to intervene as defendants, dissolving the temporary restraining order and setting a hearing on plaintiff's motion for a preliminary injunction and defendants' motions to dismiss for January 31, 1989. The Court ruled that the *status quo* should be maintained until a decision could be rendered on plaintiff's motion for a preliminary injunction. Both plaintiff and defendants were directed not to undertake work for the purpose of constructing a cable system at the Estates until further Order of Court. Jones Intercable had laid approximately five miles of wiring within the Estates prior to the dissolution of the temporary restraining order. At the present time, Jones Intercable is providing cable service to five residents of the Estates and claims to have over 135 orders for installation of cable service. Defendant North Star–Maryland asserts that it has laid some five miles of cable in the development and is now serving some 150 residents.

## II

### Defendants' Motion to Dismiss—Standing

■ Defendants have filed a motion to dismiss the complaint on the ground that plaintiff lacks standing to pursue this action. Specifically, defendants assert that § 621(a)(2) of the Cable Act, 47 U.S.C. § 541(a)(2), upon which plaintiff relies for

**428**

its claim,[5] does not create a private cause of action in the federal courts. Defendants submit that the Cable Act instead relies upon local franchising authorities such as Calvert County for the enforcement of a cable franchise's rights of access to public utility easements. Plaintiff vigorously disagrees, contending that the weight of authority holds that § 621(a)(2) of the Cable Act does indeed create a federal right in favor of a cable company which has been franchised to provide cable service to a local community.

Section 621(a)(2) provides in pertinent part as follows:

> (2) Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is within the area to be served by the cable system and which have been dedicated for compatible uses, ...

The only Circuit Court opinion which to date has addressed the precise question presently before the Court is *Centel Cable Television Co. v. Admiral's Cove Associates, Ltd.*, 835 F.2d 1359 (11th Cir.1988). In a well-reasoned opinion authored by Circuit Judge Fay, the Court held that a cable television company had an implied right of action under § 621(a)(2) to enforce a claimed right to provide cable television service to a residential community.

Following its review of the various other authorities cited by the parties, this Court concludes that the *Centel* opinion correctly states the law to be applied in this case. The facts of *Centel* are remarkably similar to those present here. The cable television company there had moved for a preliminary injunction which would permit it to provide cable television to a residential community. There, as here, plaintiff alleged that it had been granted a franchise to provide cable services, that defendant was the owner of a private residential community within the franchise area, that easements for telephone and electric utilities

existed in the community and that plaintiff had been prohibited by the community from placing its cables in and along these same easements. In *Centel*, it appeared that the owner of the development had been preventing plaintiff from having access to the easements so that such owner might negotiate an exclusive deal with a competing company to provide cable to the residents. Plaintiff there sought a preliminary injunction which would allow it to place its cables in the easements. The district court dismissed the complaint, finding that § 621(a)(2) did not provide plaintiff with a cause of action. On appeal, the Eleventh Circuit reversed, concluding that the statute in question indicated a congressional desire to provide such a cause of action.

In determining whether there is an implied cause of action under a federal statute when there is no express provision in the statute authorizing the private suit, "[t]he central inquiry remains whether Congress intended to create, ... by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979); *see also Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979). The Supreme Court in the landmark case of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), identified four relevant factors which may be indicative of such intent. These factors require this Court to analyze (1) whether the statute was enacted for the benefit of a special class of which plaintiff is a member; (2) whether there is any indication of legislative intent to create or deny a private remedy; (3) whether implication of such a remedy is consistent with the underlying purposes of the general legislative scheme; and (4) whether implying a federal remedy is inappropriate because the subject matter involves an area basically of concern to the states. *Id.* at 78, 95 S.Ct. at 2088 (citations omitted).

---

5. In its complaint, plaintiff alleges both federal question and diversity jurisdiction. Although the parties dispute the existence of diversity jurisdiction, the question has not been adequate-

ly briefed for the Court to decide the issue. Moreover, the issue need not be reached since the Court has concluded that federal question jurisdiction exists in this case.

Analyzing § 621(a)(2) under the four factors of *Cort v. Ash*, this Court finds and concludes that Congress indeed intended to provide a private right of action to a cable television company like the plaintiff in this case. This Court would agree completely with the *Centel* analysis in which Circuit Judge Fay carefully reviewed the statutory history of the Cable Act and concluded that consideration of each of the four *Cort* factors indicated a congressional desire to provide a cause of action for a cable television company. This Court will adopt for the purposes of this case the reasoning of the Eleventh Circuit in *Centel*.

Most of the district court opinions which have been cited by the parties support this Court's conclusion that the plaintiff has standing to bring this action under § 621(a)(2) of the Cable Act. *See Cable Associates, Inc. v. The Town & Country Management Corp.*, 709 F.Supp. 582 (E.D. Pa. 1988); *Centel Cable Television Co. v. Burg & Divosta Corp.*, Case No. 88–8378–Civ–Ryskamp, slip op. at 5–6 (S.D.Fla. Sept. 30, 1988). *See also Rollins Cablevue, Inc. v. Saienni Enterprises*, 633 F.Supp. 1315 (D.Del.1986) (*"Rollins I"*); *Rollins Cablevue, Inc. v. Saienni Enterprises*, 115 F.R.D. 484 (D.Del.1986) (*"Rollins II"*); and *Rollins Cablevue, Inc. v. Saienni Enterprises*, Civ. No. 86–139–JRR (D.Del. Apr. 28, 1987) ("Rollins III"). Although the Court in *"Rollins I"* concluded that the Cable Act did not create a private right of action which would permit a cable company to enjoin construction by an unfranchised rival cable system, the Court permitted the plaintiff to proceed under the Act against the owner of an apartment complex and subsequently entered a preliminary injunction granting the cable company access to the private property. *Rollins II* and *Rollins III* thus support the Court's conclusion in this case.

In their memoranda submitted in support of their motions to dismiss, defendants place heavy reliance on *Cable Investments, Inc. v. Woolley*, 680 F.Supp. 174 (M.D.Pa. 1987). On the same day that argument on pending motions was heard in this Court, the Third Circuit Court of Appeals filed an opinion affirming the District Court's dismissal of the complaint in that case but for reasons different from those stated by District Judge Kosik. *Cable Investments, Inc. v. Woolley*, 867 F.2d 151 (3rd Cir. 1989).

In its very recent *Woolley* decision, the Third Circuit expressly intimated no opinion concerning the Eleventh Circuit's ruling in *Centel*. 867 F.2d at 154. *Woolley* involved the asserted right of a cable company to compel access to and including the interior of a multi-unit dwelling for the purpose of offering cable television service to tenants of that apartment building. Concluding that the cable company's complaint based on the Cable Act did not state a cause of action, Circuit Judge Sloviter found that it was not necessary to reach the issue whether a private right of action can be implied under the Cable Act to enforce the right asserted.

Accordingly, the *Woolley* opinion is of little assistance to defendants in this particular case. The Third Circuit in *Woolley* held only that the Cable Act provides no substantive right whereby a cable company would be entitled to run cable wires along utility easements within the *interior* of a multi-unit dwelling in order to provide cable service to the tenants therein. From its review of the legislative history of the Cable Act, the Court concluded that Congress did not intend that cable companies could compel the owner of a multi-unit dwelling to permit them to use the owner's private property to provide cable service to apartment dwellers. 867 F.2d at 156.

No multi-unit apartment building is involved here. Rather, the Estates is a large residential community with telephone and electric utility easements existing in and over its roads and byways. Indeed, Circuit Judge Sloviter specifically observed that "the substantive right sought to be enforced in *Centel* is more limited than that sought here, where [plaintiff] seeks access to tenants inside buildings owned by [defendants]." 867 F.2d at 154. As discussed more fully hereinafter, this Court has concluded that the Cable Act does indeed give a franchised cable company a substantive

right of access to property through easements which are within the area to be served and which have been dedicated for compatible uses. As *Centel* and the other cases cited hereinabove have held, a private right of action does exist under the Cable Act permitting plaintiff to seek to enforce such a statutory right.

For these reasons, this Court concludes that under § 621(a)(2) of the Cable Act, plaintiff has standing to assert a cause of action against defendants in this case. Accordingly, defendants' motion to dismiss for lack of standing will be denied.

### III

*Motion to Dismiss—Indispensable Party*

■ Defendants have filed a second motion to dismiss pursuant to Rules 12(b)(7) and 19(a), F.R.Civ.P., asking this Court to dismiss plaintiff's complaint for failure to join Calvert County as a party in this litigation. Defendants assert that defendant North Star–Maryland and plaintiff both claim to have been granted a cable franchise from Calvert County to operate a cable television system within the Estates. Because the Court must necessarily define the extent of Calvert County's authority with respect to the granting of a cable franchise in a private development, defendants argue that the County is an "indispensable party" to this litigation.

Rule 19(a) governs the "Joinder of Persons Needed for Just Adjudication," and provides, in pertinent part, as follows:

(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obli-

gations by reason of the claimed interest. If the person has not been so joined, the court shall order that person be made a party.

The purpose of Rule 19 is to provide for the full and complete adjudication of a dispute with a minimum of litigation effort, so that the interests of the plaintiff, the defendants, and the public will best be served. *Schutten v. Shell Oil Co.,* 421 F.2d 869, 873 (5th Cir.1970). The Fourth Circuit Court of Appeals has held that "[t]he inquiry contemplated by Rule 19 is a practical one. It is addressed to the sound discretion of the trial court." *Coastal Modular Corp. v. Laminators, Inc.,* 635 F.2d 1102, 1108 (4th Cir.1980).

Applying these principles to the facts of this case, this Court does not conclude that this civil action must now be dismissed pursuant to Rule 19 because Calvert County has not been joined as a party. Although Calvert County is not an indispensable party, the Court believes that it would be desirable to require joinder of the County under Rule 21. There is no need to join the County for the entry of the preliminary injunction sought by the plaintiff. However, the presence of the County as a party here and a determination of the County's position concerning the dispute between these competing cable companies may permit the Court to frame a more effective final judgment or decree granting final relief to the prevailing party. Accordingly, defendants' motion to dismiss pursuant to Rule 19 will be denied, but an appropriate Order will be entered under Rule 21.

On the record here, this Court does not find that in the absence of Calvert County, complete relief cannot be accorded among those who are already parties. The preliminary relief ordered by the Court herein does not alter any action previously taken by the County nor does it require any action by the County. The Consent Agreement previously signed by the County merely stated that to the extent that it had such authority, the County would permit defendants to have their own cable television system in the Estates. Similarly, the

non-exclusive franchise awarded to plaintiff's predecessor permits plaintiff also to operate a cable system on property of the Estates.

Moreover, this Court's ruling on the motion for a preliminary injunction should not as a practical matter impair the County's ability to protect its interests relating to the subject of this action. The Court can determine preliminarily whether plaintiff has an immediate right to lay cable wiring along utility easements within the Estates pursuant to federal law without impairing any interest of the County. The case thus does not raise the prospect of the entry by the Court of a decree voiding any governmental order. Indeed, the County has in the past demonstrated an unwillingness to proceed with litigation seeking to resolve the respective rights of these parties, and more recently has indicated that it does not intend to participate voluntarily in this action.[6]

Finally, a decision by the Court in this case should not leave those presently parties to this suit subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Defendants argue that a decision favorable to plaintiff would necessarily require a finding that Calvert County is empowered to grant a franchise in a private community. As a result, defendants argue, Calvert County might impose on North Star–Maryland a franchise fee in contravention of the Consent Agreement. The record to date does not support this contention. The County has been made aware of this litigation and presumably would have sought to intervene if it believed that the suit's outcome would entitle it to a franchise fee. Defendants' argument relies on many assumptions which are unwarranted on this record at this preliminary stage of the proceedings.[7] *See Coastal Modular Corp.,* 635 F.2d at 1108.

Nevertheless, it is apparent to the Court that Calvert County, as the local entity responsible for franchising these cable companies, does indeed have an interest in the subject matter of this dispute. In passing the Cable Act, it was the intent of Congress that local governments should continue to have substantial control over cable services in their own communities. *See* H.R.Rep. No. 934, 98th Cong., 2d Sess. 19–20, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4655, 4656–57. The circumstances of this case lead the Court to the view that joinder of Calvert County in this case would be desirable, although not indispensable, in order that all parties with an interest in this dispute may be heard on the merits and in order that a final and more complete resolution of the issues raised herein may result.

Rule 21, F.R.Civ.P., provides in relevant part: "Parties may be dropped or added by Order of the Court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." *See Saul Stone & Co. v. Browning,* 615 F.Supp. 20, 22 (N.D.Ill.1985). The Rule grants the trial judge broad discretion to join additional parties as plaintiffs or defendants in order to issue an effective decree, prevent multiplicity of suits, or to grant complete relief. *See A.S. Abell Co. v. Chell,* 412 F.2d 712, 717 (4th Cir.1969); *Caperton v. Beatrice Pocahontas Coal Co.,* 585 F.2d 683, 691–92 (4th Cir.1978).

For the reasons stated, defendants' motion to dismiss for failure to join an indispensable party will be denied. However, the Court will enter an Order directing plaintiff to file an amended complaint naming as defendants not only the present parties but also the Board of Commissioners of Calvert County. Plaintiff, *inter alia,* should seek declaratory relief against the County Commissioners, including a request that the Court adjudicate plaintiff's right to provide cable television service to residents

---

6. The Court has been advised that counsel have contacted officials of Calvert County, and that these officials have declined to participate in this litigation.

7. Defendants' reliance on *Chesapeake Bay Village, Inc. v. Costle,* 502 F.Supp. 213 (D.Md.1980) and *Spirt v. Teachers Insurance and Annuity Association,* 416 F.Supp. 1019 (S.D.N.Y.1976) is misplaced. The facts of those cases are markedly different from the ones present here.

of the Estates. While this question and other issues are being litigated, the preliminary injunction being entered herein will remain in full force and effect.

## IV

### Plaintiff's Motion for Preliminary Injunction

The principles to be applied by this Court in determining whether a preliminary injunction should issue are well established. The standard for granting interlocutory injunctive relief in this Circuit is the "balance-of-hardship" test first outlined in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 196 (4th Cir. 1977). This test depends on a "flexible interplay" among four factors to be considered: (1) the likelihood of irreparable harm to plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to defendants if the requested relief is granted; (3) the likelihood that plaintiff will succeed on the merits; and (4) the public interest. *Federal Leasing, Inc. v. Underwriters at Lloyd's*, 650 F.2d 495, 499 (4th Cir. 1981); *Maryland Undercoating Co. v. Payne*, 603 F.2d 477, 481 (4th Cir.1979). A preliminary injunction is an extraordinary remedy, and the plaintiff in a particular case has the burden of showing an entitlement to this form of injunctive relief. *Telvest, Inc. v. Bradshaw*, 618 F.2d 1029, 1036 (4th Cir.1980). The final decision whether to grant or deny a motion for preliminary injunction is one committed to the sound discretion of the trial judge. *First Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481, 483 (4th Cir.1970).

While a trial court should properly consider all four factors outlined in *Blackwelder*, the Fourth Circuit has emphasized that

[T]he two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree. If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success.

*Blackwelder, supra*, 550 F.2d at 196; *see also Federal Leasing, supra*, 650 F.2d at 499. Thus, the likelihood of irreparable injury and the probability of success on the merits must be considered in relation to each other.

■ Findings of fact and conclusions of law as required by Rule 52(a), F.R.Civ.P., are contained in this Memorandum and Order. In view of the short period between the filing of the complaint in this case and the hearing on plaintiff's motion for a preliminary injunction, there has been little time for the parties to engage in discovery. Accordingly, the motion was heard and considered on the voluminous record furnished to the Court by way of affidavits, exhibits and memoranda. It is well established that a court may make findings of disputed facts on a record such as this one for the purpose of ruling on a motion for a preliminary injunction. *Federal Leasing, Inc. v. Underwriters at Lloyds*, 487 F.Supp. 1248, 1253 (D.Md.1980), *aff'd*, 650 F.2d 495 (4th Cir.1981).

■ After carefully reviewing the record here and after hearing oral argument, this Court finds and concludes that the balance of hardship at this stage of the case weighs decidedly in favor of plaintiff. Upon consideration of all of the *Blackwelder* factors, this Court is satisfied that a preliminary injunction should issue and should remain in effect during the pendency of this case.

Considering first the factor of irreparable harm, the Court finds it likely that plaintiff will suffer irreparable harm if the preliminary injunction is not issued. Were plaintiff denied the right to construct and operate a cable television system within the Estates during the pendency of this case, North Star–Maryland would enjoy a judicially sanctioned monopoly during the time required to bring this case to trial. Were plaintiff to then ultimately prevail on the merits, it would be difficult, if not impossible, to determine how many subscribers plaintiff could have obtained if it had been allowed to compete within the Estates. Immeasurable harm to plaintiff's reputation and good will would result if it became known to the residents that plaintiff was

not being permitted to provide cable service to the Estates at the present time.

It is of considerable significance in this case that plaintiff does not seek to exclude defendant North Star–Maryland from constructing and operating its own cable system within the Estates. Plaintiff seeks merely to compete with North Star–Maryland in soliciting and providing cable television services to the residents of the Estates.

In contrast to the potential injury faced by plaintiff if the motion is denied, the only threatened harm to defendants if the preliminary injunction were granted is the prospect of competition for cable service within the Estates. With the entry of a preliminary injunction, defendant North Star–Maryland will lose the monopoly it claims was created by what it characterizes as "an exclusive" franchise agreement. However, such claimed monopoly is contrary to both federal and County law. Section 601(6) of the Cable Act, 47 U.S.C. § 521(6), specifically provides that one of the primary purposes of the federal legislation was to "promote competition in cable communications and minimize unnecessary regulation that would impose an undue burden on cable systems." The legislative history of the Cable Act further indicates that "[a]ny private arrangements which seek to restrict a cable system's use of such easements and rights-of-way which have been granted to other utilities are in violation of this section and are not enforceable." H.R.Rep. No. 934, 98th Cong., 2d Sess. 59, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4655, 4696. Moreover, County law itself prohibits the granting by the County of an exclusive franchise to a cable company providing cable television services. *See* County Ordinance of July 24, 1984.

Were defendants to ultimately prevail in this case on the merits, North Star–Maryland would presumably take over Jones Intercable's subscribers. Any property damage caused by construction operations of Jones Intercable would be adequately covered by the bond which plaintiff has posted with this Court, with the utility companies, and with Calvert County pursuant to the cable franchise agreement.

In support of the conclusion reached herein, this Court would rely on the sound reasoning of Judge Ryskamp in *Centel Cable Television Co. v. Burg & DiVosta Corp.* (Case No. 88–8378–CIV–RYSKAMP) (S.D.Fla.1988). That case involved factual circumstances remarkably similar to those present here. Centel Cable, plaintiff in that case, had a non-exclusive cable franchise for an entire municipality, including a private residential development owned by defendant Burg & Divosta Corporation. The Court there entered a preliminary injunction enjoining defendant from preventing Centel Cable from laying cable wire along utility easements within the development. In language equally applicable to this case, Judge Ryskamp stated:

> If preliminary relief is not granted, Centel will incur indeterminable additional costs, will lose indeterminable customers, revenues and profits, and will suffer irreparable damage to its reputation and good will.
>
> The record indicates that no substantial harm will be caused to Burg & DiVosta if preliminary injunctive relief is granted. Centel is insured, has posted a performance bond with the town of Jupiter and has been in the cable business for a number of years. Further, Section 621(a)(2)(A)—(C) of the Cable Act (47 U.S.C.A. § 541(a)(2)(A)—(C)) provides Burg & Divosta with statutory protection as to the manner of Centel's access to and work in [the development]. Section 621(a)(2)(c), as well as the common law, permits Burg & Divosta to seek compensation for any harm caused by Centel. 47 U.S.C. § 541(a)(2)(c).

*Id.,* slip op. at 6–7.

This Court having resolved the balance of hardships in favor of plaintiff, it is enough for the entry of a preliminary injunction that serious or grave questions have been presented. *Blackwelder, supra,* 550 F.2d at 196. However, much more has been shown by plaintiff here. The record in this case indicates that plaintiff very likely will prevail on the merits of this case.

Plaintiff has a non-exclusive franchise which extends to all unincorporated areas of the County. Pursuant to § 621(a)(2) of the Cable Act, 47 U.S.C. § 541(a)(2), plaintiff has a right to gain access to the Estates along easements therein which are "dedicated for compatible uses." *See also Centel, supra,* 835 F.2d at 1362; *Cable Holdings of Georgia, Inc. v. McNeil Real Estate Fund VI, Ltd.,* 678 F.Supp. 871, 874 (N.D.Ga.1986). By "compatible" easements, Congress meant those easements "dedicated for electric, gas, or other utility transmission." *Centel, supra,* 835 F.2d at 1362 n. 5 (citing H.R.Rep. No. 934, 98th Cong., 2d Sess. 59, *reprinted in* 1984 U.S. Code Cong. & Admin.News 4655, 4696). Plaintiff's predecessor in interest, Rite Cable, negotiated license agreements with the electric and telephone companies to make use of their easements. Therefore, Jones Intercable would appear to have an enforceable statutory right to lay cable wires within the Estates along those utility easements.

Defendants raise various arguments contesting plaintiff's case on the merits. First, defendants argue that plaintiff does not have a valid franchise to operate a cable television system within the Estates. Defendants rely on the Memorandum of the County Attorney dated July 30, 1985 indicating his opinion that Calvert County had no authority to franchise a cable company in the Estates because there were no "public rights of way" in the development.

The conclusions reached by the County Attorney are erroneous as a matter of law. The County Attorney did not even mention § 621(a)(2) of the Cable Act, which is clearly applicable here. Under that statute, a franchisee may construct a cable system through easements which are within the area to be served and which have been dedicated for compatible uses. Just such easements exist in the Estates. In concluding that neither the County nor a developer had the authority to award a cable franchise within the Estates, the County Attorney in essence was of the opinion that no cable service could be provided to the Estates by any one. Such a result is hardly in accord with federal or local law.

Defendants also argue that plaintiff is presently estopped from claiming a right to provide cable service within the confines of the Estates. Defendants contend that the respective rights of the parties to operate cable television systems in the Estates was addressed in earlier litigation between the parties which culminated in a Consent Agreement and that such Agreement bars plaintiff from suing here. There is no support in the record here for this contention. The Consent Agreement on which defendants rely cannot bind plaintiff or its predecessor, Rite Cable, because neither entity was a party to that agreement. Rite Cable did no more than permit the dismissal with prejudice of an action brought against it in federal district court by entities which are not parties to this suit. There is no indication that the cable franchise held by Rite Cable, and now by plaintiff, was modified in any manner. Indeed, Paragraph 6 of the Consent Agreement states: "The parties hereto stipulate and agree that this Agreement shall bind *only* the Defendants, Laxton CATV, Inc. and Chesapeake Shores Cable Vision and Plaintiffs, Board of County Commissioners and Calvert County." (Emphasis added). The Consent Agreement hardly precludes litigation by plaintiff of its right under the Cable Act to lay cable wiring along compatible utility easements located within the Estates.

Relying on doctrines of waiver and estoppel, defendants further point to letters written in 1985 by two of Rite Cable's employees, Jeff Miller and George Sevast. According to defendants, these letters demonstrate that Rite Cable recognized that it had no legal right to enter the Estates. The letters in question hardly bar or estop plaintiff from seeking to enforce in this action rights conferred upon it by the Cable Act. The employees in question were neither attorneys nor executive officers of plaintiff's predecessor. To avoid a confrontation in 1985 with the owners of the Estates, these representatives of Rite Cable agreed to respect the owner's right to deny them access to the property at that time. Such was hardly a binding and conclusive agreement by Rite Cable that it (or its

successors) had no legal right to provide cable services to residents of the Estates at any time in the future. Indeed, these individuals specifically questioned the right of any other cable company to provide services to the property and requested a clarification from the County Commissioners concerning what a non-franchised cable company could do in the County.[8]

Defendants also argue that plaintiff cannot prove that the utility easements it seeks to use are "compatible" with cable construction. Defendants assert that most of the utility easements granted by the Chesapeake Ranch Club and the Property Owner's Association are aerial easements while the cable wiring being installed by Jones Intercable is underground. Defendants further contend that those underground easements which were granted to the electric company generally cannot permit, for safety reasons, any other use. These arguments are unavailing.

Plaintiff's predecessor, Rite Cable, entered into a license agreement with the Southern Maryland Electric Cooperative permitting it to attach cables, wires and other facilities to the electric company's poles. Rite Cable also entered into a license agreement with the Chesapeake and Potomac Telephone Company which allowed Rite Cable to "place and maintain aerial and *underground* communications facilities." (Emphasis added). These are clearly "compatible uses" under § 621(a)(2). The legislative history of the Cable Act indicates that Congress intended to authorize the cable operator to "piggyback" on easements dedicated for electric gas or other utility transmissions. *Centel Cable Television Company v. Admiral's Cove Associates, Ltd., supra,* 835 F.2d at 1362 n. 5. In any event, plaintiff has indicated its willingness to utilize aerial easements for its cable wires if ordered to do so by the Court. No such restriction is necessary here.

With respect to the final *Blackwelder* factor, this Court concludes that the grant-

ing of this preliminary injunction will advance the public interest. This is a case in which two competing cable companies are poised to offer cable service to residents of the Estates. With the entry of this preliminary injunction, the residents in question will be able to choose now between the packages being offered by two competing cable companies. Such competition will advance the purposes of the Cable Act by serving the best interests of the consumer. Section 601 of the Cable Act indicates that Congress sought to

> (2) establish franchise procedures and standards which *encourage the growth and development of cable systems* and which assure that cable systems are responsive to the needs and interests of the local community; [and]. . . .
>
> (4) assure that cable communications *provide and are encouraged to provide the widest possible diversity of information sources and services to the public.* . . .

47 U.S.C. § 521(2), (4) (emphasis added).

Balancing all of the *Blackwelder* factors, this Court concludes that plaintiff is entitled to a preliminary injunction which will enjoin defendants from taking any action to prevent plaintiff from constructing and operating a cable system within the Estates. This injunction will remain in effect during the pendency of this litigation and until the claims and counterclaims are finally determined by the Court.

For the reasons stated, it is this 14th day of February, 1989, by the United States District Court for the District of Maryland,

ORDERED:

    1. That defendants' motion to dismiss for lack of standing be and the same is hereby denied;

    2. That defendants' motion to dismiss for failure to join an indispensable party be and the same is hereby denied;

    3. That plaintiff shall file an amended complaint within 15 days adding as a party defendant the Board of County Commissioners of Calvert County;

---

**8.** By letter dated June 27, 1985, County Commissioner Gott advised the Rite Cable representative that his company was "free to seek any and

all remedies available to you for the protection of your franchise territory."

4. That plaintiff's motion for a preliminary injunction be and the same is hereby granted;

5. That defendants Property Owners Association Chesapeake Ranch Estates, Inc. and Chesapeake Ranch Water Company are hereby enjoined until further Order of Court from interfering with the installation by plaintiff of cable television wiring within the Chesapeake Ranch Estates;

6. That said defendants shall until further Order of Court assist plaintiff with the aforesaid installation by informing plaintiff of the locations of all water lines running below ground on the property of Chesapeake Ranch Estates; and

7. That the restrictions imposed on defendants and intervening defendants by Paragraph 2 of the Court's Order of January 13, 1989 be and the same are hereby rescinded.